1

2

3

4

5

6

7

8

**IN THE UNITED STATES DISTRICT COURT**

9

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11

ENDURANCE AMERICAN SPECIALTY                    CASE NO. CV F 10-1284 LJO DLB
INSURANCE COMPANY,

12
                                                                                 **ORDER ON DEFENDANTS' F.R.Civ.P. 12**
                          Plaintiff,                                **MOTIONS TO DISMISS**
13          vs.                                                      (Docs. 17, 18.)

14       LANCE-KASHIAN & COMPANY, et al.,

15                          Defendants.
                                                                    /
16

17                                          **INTRODUCTION**

18          Insured defendants Edward Kashian, Jennifer Schuh and Lance-Kashian & Company

19   (collectively "insureds") seek to dismiss plaintiff insurer Endurance American Specialty Insurance

20   Company's ("Endurance's") coverage claims arising from fees of attorneys defending the insureds in

21   an underlying action.  The insureds further seek to dismiss Endurance's attorney fees and punitive

22   damages claims as legally barred.[1]  Endurance characterizes the insureds' motions as factually based and

23   as their attempt to avoid terms and conditions of their Endurance policy.  This Court considered the

24   insureds' motions to dismiss on the record and VACATES the September 16, 2010 hearing, pursuant

25   ───────────────

26          [1]          The insureds originally styled their motion as to attorney fees and punitive damages as a F.R.Civ.P. 12(f)
     motion to strike.  However, in their reply papers, the insureds correctly note that such motion should proceed under F.R.Civ.P.
27   12(b)(6) based on the recent decision of *Whittlestone, Inc. v. Handi-Craft Co.*, __ F.3d __ , 2010 WL 3222417, *4 (9th Cir.
     2010) ("We therefore hold that Rule 12(f) does not authorize district courts to strike claims for damages on the ground that
28   such claims are precluded as a matter of law.") As such, this Court will address the insureds' requested relief under F.R.Civ.P.
     12(b)(6) standards.

1

to Local Rule 230(g).  For the reasons discussed below, this Court GRANTS in part and DENIES in part dismissal of Endurance's claims.

## **BACKGROUND**[2]

### **The Parties And Others**

Non-party Gottschalks, Inc. ("Gottschalks") is the sole limited partner in the Park 41 Limited Partnership ("Park 41") and owns 36 percent of Park 41.  Non-party River Park Properties III ("RPP III") is a California limited partnership, owns 64 percent of Park 41, and is its sole general partner.

Defendant Lance-Kashian & Company ("Lance-Kashian") is RPP III's general partner.  Defendant Jennifer Schuh ("Ms. Schuh") is Lance-Kashian's chief executive officer.  Defendant Edward Kashian ("Mr. Kashian") is Lance-Kashian's president and former chief executive officer.

### **The Policy**

In late 2008, Endurance issued to the insureds a Professional, Management, Employment Practices and Fiduciary Liability Insurance Policy ("policy").[3]  The policy gives Endurance "the right and duty to defend any **Claim** against an **Insured**"[4] and provides that Claim Expenses incurred in the defense of a Claim are included in the policy's $2 million limits.  The policy defines **"Claim Expenses"** as:

> 1.  reasonable fees charged by any lawyer selected by mutual agreement between the **Company** and the **Insured**.  However, if after a good faith attempt by the **Company**, the **Company** and the **Insured** cannot agree on the selection of the lawyer, the **Company** shall select the lawyer.
>
> 2.  all other reasonable fees, costs and expenses resulting from the investigation and defense of a **Claim**, if incurred by the **Company** or by the **Insured** with the written consent of the **Company**.
>
> **"Claim Expenses"** shall not include overhead expenses of the **Insured** or any salaries, wages, fees, or benefits of the directors, officers, trustees or employees of the **Insured**.  The determination by the **Company** as to the reasonableness of **Claim Expenses** shall be conclusive on the **Insured**.

---

[2]    The following factual recitation is derived generally from Endurance's operative complaint ("complaint") and other matters which this Court may consider on a F.R.Civ.P. 12(b)(6) motion.

[3]    Endurance characterizes the policy as a director and officer liability policy.

[4]    Unless otherwise noted, bold text appears in the original.

1  The policy provides that the "**Insured** shall not, except at the **Insured's** own cost, make any payment,
2  . . . or assume any obligation."

3  ### The Underlying Action

4  On November 12, 2009 when the policy was in effect, Gottschalks, as debtor in a Delaware
5  bankruptcy proceeding, filed an adversary proceeding ("underlying action") against the insureds and RPP
6  III to allege that the insureds and RPP III had wrongfully interfered with Gottschalks efforts to assign
7  its limited partnership and leasehold interest in Park 41.  Prior to the underlying action's filing, the
8  insureds and RPP III had retained Cozen O'Connor, a large international law firm, to represent their
9  collective interests in Gottschalks' bankruptcy.  On November 17, 2009, the insureds informed
10  Endurance of the underlying action and requested Endurance's consent to Cozen O'Connor's retention
11  to defend the insureds in the underlying action.

12  ### Endurance's Reservation Of Rights Letter

13  Endurance responded with its December 30, 2009 reservation of rights letter ("ROR letter") to
14  note that Cozen O'Connor's rates "are substantially higher than Endurance's generally accepted rates
15  for counsel."  The ROR letter continued:

16  > Accordingly, Endurance will only consent to the Insureds' proposed defense arrangement
17  > and retention of Cozen O'Connor at reduced hourly rates as follows: (1) maximum
     > hourly rates for partners of $350/hr; (2) maximum hourly rates for associates of $250/hr;
18  > and (3) maximum hourly rates for paralegals of $150/hr.

19  > . . . RPP III is not an Insured under the policy and therefore no coverage is
     > afforded under th Policy for the defense of RPP III.  Endurance understands that Cozen
     > O'Connor may also be defending RPP III in connection with the Adversary Proceeding.
20  > Thus, to the extent Endurance agrees to Cozen O'Connor's defense of the Insureds in
     > connection with the Adversary Proceeding, an allocation between Cozen O'Connor's
21  > defense of the Insured parties and its defense of the non-insured RPP III will be
     > necessary.  Based on the allegations and legal theories set forth in the Adversary
22  > Proceeding, it appears that RPP III is the subject to the majority, if not all, of any
     > potential liability arising out of the Adversary Proceeding.  Thus, Endurance proposes
23  > an allocation of one-third of the defense costs incurred by Cozen O'Connor in defending
     > the Adversary Proceeding to the Insured parties and two-thirds to the non-insured party
24  > RPP III.

25  ### Subsequent Communications

26  During early 2010, Endurance and the insureds communicated about, using the complaint's
27  words, "defense arrangements to which Endurance would consent."  Endurance claims that it
28  "repeatedly" asked if the insureds intended to select Cozen O'Connor on the ROR letter's "conditions"

and that Endurance reminded the insureds that "it was prepared to select and appoint different defense counsel if those conditions were not acceptable to the Insureds." Endurance further claims that it was prepared "to select defense counsel who would only charge reasonable hourly rates" and would represent only the insureds in the underlying action.

The insureds determined to have Cozen O'Connor and Fresno law firm Walter & Wilhelm serve as their defense counsel in the underlying action. The two firms also served as RPP III's defense counsel.

Endurance claims that during December 30, 2009 (ROR letter's date) to late April 2010, the insureds never objected to the ROR letter's conditions for Cozen O'Connor to serve as defense counsel. Endurance further claims that the insureds "led Endurance to believe those conditions were acceptable, and they acknowledged that they would be responsible for the hourly rates of Cozen O'Connor attorneys over and above the rates Endurance had consented to pay. Accordingly, Endurance did not exercise its right to select different defense counsel."

During late April and May 2010, the insureds alerted Endurance that the insureds expected Endurance to pay all of Cozen O'Connor and Walter & Wilhelm's fees to defend "*all* parties in the Underlying Action, including non-insured RPP III, at Cozen O'Connor's standard hourly rates and further expected Endurance to pay *all* defense costs charged by yet another firm, Allen Matkins, that the Insureds and RPP III had retained without Endurance's consent." (Italics in original in complaint.) Endurance accuses the insureds of attempting "to renege on their prior commitments . . . to avoid paying their share of defense costs."

Endurance claims that it would have exercised its policy right to select defense counsel if the insureds had advised Endurance its conditions to retain Cozen O'Connor were unacceptable.

### Endurance's Claims

Endurance's complaint alleges three declaratory relief claims (collectively the "declaratory relief claims") that:

1.  Endurance is obligated to pay only one-third of the attorney fees charged by Cozen O'Connor and Walter & Wilhelm to defend the underlying action at maximum hourly rates of $350 for partners, $250 for associates, and $150 for paralegals;

2.  The insureds are obligated to pay attorney fees they incurred without Endurance's consent; and

3.  The insureds have waived and/or are estopped to seek attorney fees which Endurance did not consent to pay.

The complaint alleges a fourth claim that the insureds "breached the covenant of good faith and fair dealing implicit in the contracts described herein by engaging in the aforementioned conduct."

In addition to declaratory relief, the complaint seeks attorney fees and punitive damages.

## DISCUSSION

### F.R.Civ.P. 12(b)(6) Motion To Dismiss Standards

The insureds seek to dismiss the complaint's claims as legally barred in that Endurance imposed defense conditions and limitations which are "inconsistent" with the policy and California law to breach defense duties and to create a conflict of interest between Endurance and the insureds to entitle the insureds "to choose independent counsel and control their own defense." The insureds fault the complaint's absence of facts that the insureds "knew their true rights and subsequently 'waived' them" and that the insureds breached contractual obligations to Endurance.

Endurance responds that the insureds, not Endurance, chose defense counsel in that such counsel represented the insureds prior to Endurance's involvement in the underlying action, "thus making it virtually impossible that any actual conflict of interest existed in this case." Endurance argues that this Court is unable to determine the validity of Endurance's claims "as a matter of law" given existence of "numerous factual questions."

A F.R.Civ.P. 12(b)(6) motion to dismiss is a challenge to the sufficiency of the pleadings set forth in the complaint. "When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Bell Atl. Corp.*

1   *v. Twombly*, 550 U.S. 554, 127 S. Ct. 1955, 1966 (2007) (internal quotation marks omitted).   A

2   F.R.Civ.P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the

3   absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*,

4   901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).

5   In resolving a F.R.Civ.P. 12(b)(6) motion, a court must:  (1) construe the complaint in the light

6   most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine

7   whether plaintiff can prove any set of facts to support a claim that would merit relief.  *Cahill v. Liberty*

8   *Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996).  Nonetheless, a court is not required "to accept as

9   true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."

10   *In re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).  A court

11   "need not assume the truth of legal conclusions cast in the form of factual allegations," *U.S. ex rel.*

12   *Chunie v. Ringrose*, 788 F.2d 638, 643, n. 2 (9th Cir.1986), and a court must  not "assume that the

13   [plaintiff] can prove facts that it has not alleged or that the defendants have violated . . . laws in ways

14   that have not been alleged." *Associated General Contractors of California, Inc. v. California State*

15   *Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897 (1983).  A court need not permit an attempt

16   to amend if "it is clear that the complaint could not be saved by an amendment." *Livid Holdings Ltd.*

17   *v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

18   "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

19   allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more

20   than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

21   *Twombly*, 550 U.S. 554,127 S. Ct. at 1964-1965 (internal citations omitted).  Moreover, a court "will

22   dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead

23   sufficiently all required elements of a cause of action." *Student Loan Marketing Ass'n v. Hanes*, 181

24   F.R.D. 629, 634 (S.D. Cal. 1998).  In practice, "a complaint . . . must contain either direct or inferential

25   allegations respecting all the material elements necessary to sustain recovery under some viable legal

26   theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v. Ford Motor Co.*,

27   745 F.2d 1101, 1106 (7th Cir. 1984)).

28   In *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937,1949 (2009), the U.S. Supreme Court recently

1  explained:

2      To survive a motion to dismiss, a complaint must contain sufficient factual
       matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . A
3      claim has facial plausibility when the plaintiff pleads factual content that allows the court
       to draw the reasonable inference that the defendant is liable for the misconduct alleged.
4      . . . The plausibility standard is not akin to a "probability requirement," but it asks for
       more than a sheer possibility that a defendant has acted unlawfully.  (Citations omitted.)

5

6  After discussing *Iqbal*, the Ninth Circuit Court of Appeals summarized: "In sum, for a complaint

7  to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that

8  content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret*

9  *Service*, 572 F.3d 962, 989 (9th Cir. 2009) (quoting *Iqbal*, __ U.S. __, 129 S.Ct. at 1949).

10  The U.S. Supreme Court applies a "two-prong approach" to address a motion to dismiss:

11      First, the tenet that a court must accept as true all of the allegations contained in
       a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of
12      a cause of action, supported by mere conclusory statements, do not suffice. . . . Second,
       only a complaint that states a plausible claim for relief survives a motion to dismiss. . .
13      . Determining whether a complaint states a plausible claim for relief will . . . be a
       context-specific task that requires the reviewing court to draw on its judicial experience
14      and common sense. . . . But where the well-pleaded facts do not permit the court to infer
       more than the mere possibility of misconduct, the complaint has alleged – but it has not
15      "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

16      In keeping with these principles a court considering a motion to dismiss can
       choose to begin by identifying pleadings that, because they are no more than conclusions,
17      are not entitled to the assumption of truth. While legal conclusions can provide the
       framework of a complaint, they must be supported by factual allegations. When there are
18      well-pleaded factual allegations, a court should assume their veracity and then determine
       whether they plausibly give rise to an entitlement to relief.

19

20  *Iqbal*, __ U.S. __, 129 S.Ct. at 1949-1950.

21  For a F.R.Civ.P. 12(b)(6) motion, a court generally cannot consider material outside the

22  complaint. *Van Winkle v. Allstate Ins. Co.*, 290 F.Supp.2d 1158, 1162, n. 2 (C.D. Cal. 2003).

23  Nonetheless, a court may consider exhibits submitted with the complaint. *Van Winkle*, 290 F.Supp.2d

24  at 1162, n. 2.   In addition, a "court may consider evidence on which the complaint 'necessarily relies'

25  if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3)

26  no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450

27  F.3d 445, 448 (9th Cir. 2006).  A court may treat such a document as "part of the complaint, and thus may

28  assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States*

7

1   *v. Ritchie*, 342 F.3d 903, 908 (9th Cir.2003).  Such consideration prevents "plaintiffs from surviving a

2   Rule 12(b)(6) motion by deliberately omitting reference to documents upon which their claims are

3   based." *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998).[5]  A "court may disregard allegations

4   in the complaint if contradicted by facts established by exhibits attached to the complaint." *Sumner Peck*

5   *Ranch v. Bureau of Reclamation*, 823 F.Supp. 715, 720 (E.D. Cal. 1993) (citing *Durning v. First Boston*

6   *Corp.*, 815 F.2d 1265, 1267 (9th Cir.1987)).  Moreover, "judicial notice may be taken of a fact to show

7   that a complaint does not state a cause of action." *Sears, Roebuck & Co. v. Metropolitan Engravers,*

8   *Ltd.*, 245 F.2d 67, 70 (9th Cir. 1956); *see Estate of Blue v. County of Los Angeles*, 120 F.3d 982, 984 (9th

9   Cir. 1997).  A court properly may take judicial notice of matters of public record outside the pleadings'"

10  and consider them for purposes of the motion to dismiss. *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646,

11  649 (9th Cir. 1988) (citation omitted).

12         With these standards in mind, this Court turns to the insureds' challenges to the complaint's

13  claims.

14                    **Right To Choose Defense Counsel – Actual Conflict Of Interest**

15         The insureds argue that all of the complaint's claims fail in the absence of facts to support

16  "Endurance's fundamental premise" that it was entitled to choose defense counsel or otherwise control

17  the insureds' defense.  The insureds contend that such "fundamental legal premise" fails in that the ROR

18  letter reserved "conduct based" coverage defenses to create an actual conflict of interest between

19  Endurance and the insureds to entitled the insureds to select independent counsel.  As the insureds note,

20  the ROR letter identifies "actual and potential coverage issues" and reserves all of Endurance's "rights

21  and defenses under the Policy and available at law," including "any of the foregoing coverage defenses."

22  The insureds point out that the ROR letter identified the policy's "intentional act exclusion" and stated:

23              . . . Endurance shall not be liable to make any payment for Loss in connection with any
            Claim made against any Insured brought about or contributed to in fact by the
24          **intentionally dishonest, fraudulent or criminal act of any Insured** as determined by
            a final adjudication in the underlying action. To the extent such conduct is determined
25          by any final adjudication in the Adversary Proceeding, no coverage would be afforded

26  _____

27         [5]         "We have extended the 'incorporation by reference' doctrine to situations in which the plaintiff's claim
        depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not
        dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document
28  in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (citing *Parrino*, 146 F.3d at 706).

for the Adversary Proceeding under the Policy. In addition, certain intentional Wrongful Acts allegedly committed by the Insureds may be uninsurable under California law pursuant to Cal. Ins. Code §533, which precludes coverage for willful acts. *See California Amplifier, Inc. v. RU Ins. Co.*, 94 Cal. App. 4th 102 (2001).  (Bold added.)

Endurance responds that the ROR letter did not "automatically" create a conflict of interest and at best raises factual issues beyond the scope of the insureds' motion in the absence of evidence that "defense counsel has acted contrary to the insureds' interests."

In their reply papers, the insureds note the "issue is the parties' respective *legal rights* regarding *who could choose that* [defense] *counsel.*"  (Italics in original.)  The insureds continue that the "issue turns entirely on whether the reservation letter raising 'conduct-based' defenses triggered" the right to independent counsel.

The California Court of Appeal has explained the inception of a conflict of interest between insurer and insured arising from a claim of the insured's intentional conduct:

> Perhaps the most common situation in which a conflict of interest exists and independent or *Cumis* counsel is required occurs when the insured's allegedly wrongful conduct could be found to be intentional, with coverage thus depending on the ultimate characterization of the insured's actions. Both the insured and the insurer, of course, share a common interest in defeating the claims. But if liability is found, their interests diverge in establishing the basis for that liability.

*Long v. Century Indem. Co.*, 163 Cal.App.4th 1460, 1471, 78 Cal.Rptr.3d 483 (2008); *see Foremost Ins. Co. v. Wilks*, 206 Cal.App.3d 251, 261, 253 Cal.Rptr. 596 (1988) ("If the reservation of rights arises because of coverage questions which depend upon the insured's own conduct, a conflict exists."); *Purdy v. Pacific Automobile Ins. Co.*, 157 Cal.App.3d 59, 76, 203 Cal.Rptr. 524 (1984) ("when a conflict develops, the insurer cannot compel the insured to surrender control of the litigation, and must, if necessary, secure independent counsel for the insured").

Endurance and the insureds rely on different portions of California Civil Code section 2860 ("section 2860") which addresses a conflict of interest to require appointment of independent counsel. Endurance points to 2680(b), which provides in pertinent part:

> For the purposes of this section, a conflict of interest does not exist as to allegations or facts in the litigation for which the insurer denies coverage; however, when an insurer reserves its rights on a given issue and the **outcome of that coverage issue can be controlled by counsel first retained by the insurer for the defense of the claim, a conflict of interest may exist.**  (Bold added.)

1  As such, Endurance notes that a reservation of rights may create only a potential conflict of interest, not

2  an automatic conflict of interest.

3   "Civil Code section 2860, subdivision (b), tells us when a conflict may exist, i.e., when there is

4  a reservation of rights and first counsel chosen by the insurer can control the outcome of the coverage

5  issue." *United States Fidelity & Guaranty Co. v. Superior Court*, 204 Cal.App.3d 1513, 1525, 252

6  Cal.Rptr. 320 (1988).  To require independent counsel, the "conflict must be significant, not merely

7  theoretical, actual, not merely potential."  *Dynamic Concepts, Inc. v. Truck Ins. Exchange*, 61

8  Cal.App.4th 999, 1007, 71 Cal.Rptr.2d 882 (1998).  "The Legislature declined to adopt the absolutist

9  view that insurer-appointed defense counsel will only offer token resistance to claims that fall outside

10  a policy's coverage terms or limits or will steer the defense in a direction favorable to the insurer."

11  *Dynamic Concepts*, 61 Cal.App.4th at 1007, n. 5, 71 Cal.Rptr.2d 882.  "The mere fact that the insurer

12  disputes coverage and is defending on a 'reservation of rights' basis does not preclude insurer-appointed

13  counsel from providing a quality defense."  *Emplrs Ins. of Wausau v. Cal. Water Serv. Co.*, 2008 U.S.

14  Dist. LEXIS 65433, at *20 (N.D. Cal. 2008) (citing *Dynamic Concepts*, 61 Cal. App. 4th at 1007, 71

15  Cal. Rptr. 2d 882; *Golden Eagle Ins. Co. v. Foremost Ins Co.*, 20 Cal. App. 4th 1372, 1394, 25 Cal. Rptr.

16  2d 242 (1993)).

17   The insureds rely on the complaint's failure to allege a written waiver required under section

18  2860(e), which provides:

19    The insured may waive its right to select independent counsel by signing the
  following statement:  "I have been advised and informed of my right to select

20    independent counsel to represent me in this lawsuit.  I have considered this matter fully
  and freely waive my right to select independent counsel at this time.  I authorize my

21    insurer to select a defense attorney to represent me in this lawsuit."

22  The insureds argue that the complaint only alleges that they failed to object to Endurance's control of

23  the defense for a few months "until they learned of their actual rights."

24   The insureds fail to substantiate that an actual conflict entitles them to wholesale dismissal of

25  Endurance's claims.  Endurance correctly notes that if an actual conflict exists, a factual question arises

26  whether the insureds were provided with independent counsel.  As such, an underlying factual dispute

27  prevents dismissal of Endurance's claims.  The insureds' attempt to transmute the ROR letter into an

28  actual conflict of interest is unavailing, especially given that their chosen counsel represents them in the

underlying action and the insureds do not claim that their chosen counsel act contrary to the insureds' interests.  At its essence, the insureds' gripe is not about their counsel; it is about payment of defense counsel's entire fees at rates above those generally accepted by Endurance.  Moreover, the insureds fail to explain how their defense counsel are able to control the underlying action's outcome to create an actual conflict of interest, despite the ROR letter's reference to the intentional acts exclusion or Endurance's failure to obtain a written waiver.  As Endurance notes, a court or jury, not defense counsel, will determine if the insureds engaged in intentional acts not subject to coverage.  The insureds' actual conflict of interest arguments fail to support dismissal of Endurance's claims.

### Attorney Fees Cap

The insureds contend that Endurance's ability to cap attorney fees is limited by section 2860(c), which provides in part: "The insurer's obligation to pay fees to the independent counsel selected by the insured is limited to the rates which are **actually paid** by the insurer to attorneys retained by it in the **ordinary course of business** in the defense of similar actions in the community where the claim arose or is being defended."  (Bold added.)  The insureds note that having failed to comply with section 2860, "Endurance is responsible for paying defense counsels' full market rates."  The insureds continue that the policy obligates Endurance to pay defense counsel's "normal market rates" in that policy's definition of "Claim Expenses" refers to "reasonable rates charged by any lawyer" and "all other reasonable fees, costs and expenses resulting from the investigation and defense of a Claim."

Endurance responds that assuming the insureds are entitled to independent counsel under section 2860, the insureds retained such independent counsel and incurred defense costs beyond section 2860's scope.  Endurance argues that the policy does not obligate Endurance to pay defense costs to which it did not consent and which are unreasonable under the policy.  Endurance points to a further portion of section 2680(c) that section 2680(c) "does not invalidate other different or additional policy provisions pertaining to attorney's fees or providing for methods of settlement of disputes concerning those fees."  Based on this portion of section 2860(c), Endurance contends that section 2860(c) does not negate policy provisions as to "reasonableness."

The insureds respond the further portion of section 2680(c) "merely allows insurers to include a dispute resolution mechanism" as to independent counsel.

1    Endurance continues that section 2680(c) supports its "reasonableness" position in the section

2    2860(c) limits rates to those "which are actually paid by the insurer to attorneys retained by it in the

3    ordinary course of business in the defense of similar actions in the community where the claim arose or

4    is being defended."   Endurance further points out that section 2680 does not entitle the insureds to

5    multiple firms as "independent counsel" at Endurance's expense.

6    The insureds' interpretation of section 2860(c) is misguided.  Section 2860(c) does not obligate

7    Endurance to pay defense counsel's full market rates.   Section 2860(c) obligates Endurance to pay

8    "actual" rates of ordinarily retained counsel.   In addition, the insureds fail to reconcile key policy

9    provisions: the "**Insured** shall not, except at the **Insured's** own expense, make any payment . . . or

10   assume any obligation" and "The determination by the **Company** as to the reasonableness of **Claim**

11   **Expenses** shall be conclusive on the **Insured**."   With the ROR letter, Endurance conclusively

12   determined acceptable rates.  The insureds were free to accept at their expense amounts in excess of

13   acceptable rates.  At a minimum, the insureds raise a factual issue beyond their motion's scope as to fee

14   reasonableness.  "[Q]uestions of fact cannot be resolved or determined on a motion to dismiss for failure

15   to state a claim upon which relief can be granted." *Cook, Perkiss and Liehe, Inc. v. Northern California*

16   *Collection Service Inc.*, 911 F.2d 242, 245 (9th Cir. 1990).   The insureds' points regarding fee

17   reasonableness fail to defeat Endurance's claims.

18                                **Allocation Of Defense Costs**

19   The insureds seek to dismiss Endurance's "allocation" claim[6] as contrary to the policy and

20   California law.   The insureds claim that Endurance attempted to impose the allocation between the

21   insureds and RPP III in exchange for Endurance's consent to the insureds' choice of Cozen O'Connor

22   as defense counsel.  The insureds argue that Endurance's "allocation" claim fails because "it was based

23   on a purported bargained-for exchange which fails for lack of consideration." *See O'Byrne v. Santa*

24   *Monica-UCLA Medical Center*, 94 Cal.App.4th 797, 808, 114 Cal.Rptr.2d 575 (1976) ("A statutory or

25   legal obligation to perform an act may not constitute consideration for a contract."); *Louisville Title Ins.*

26   *Co. v. Surety Title & Guar. Co.*, 60 Cal.App.3d 781, 791, 132 Cal.Rptr. 63 (1976) ("a consideration for

27

28   ----

[6]      The insureds do not identify Endurance's "allocation claims."  This Court surmises that the insureds refer
to the complaint's first declaratory relief claim that Endurance is obligated to pay only one-third of the defense attorney fees.

12

an agreement is not adequate when it is a mere promise to perform that which the promisor is already

legally bound to do").

The insureds further argue that Endurance's proposed allocation is barred by the policy's

allocation provision ("allocation provision"), which provides:

> If a **Claim** made against any **Insured** includes both covered and uncovered matters or is made against both an **Insured** and others not insured under this Policy, the **Insured** and the **Company** agree that there must be an allocation between insured and uninsured **Loss**. The **Insureds** and the **Company** shall use their best efforts to agree upon a fair and proper allocation between insured and uninsured Loss. However, *the **Company** shall not seek to allocate with respect to **Claim Expenses** and shall pay one hundred percent (100%) of **Claim Expenses** so long as a covered matter remains within the **Claim***. (Italics added.)

The insureds argue that the allocation provision's third sentence is an "exception" to the preceding two

sentences for "Claim Expenses" in that the third sentence "qualifies" the allocation provision by barring

Endurance's allocation of Claim Expenses and requiring Endurance to pay 100 percent of Claim

Expenses.

The insureds contend that Endurance's "'partial' defense via its forward-going allocation

condition violated its duty to provide the Insured Defendants with a complete and full defense."  The

insureds point to *Buss v. Superior Court*, 16 Cal.4th 35, 49, 65 Cal.Rptr.2d 366 (1997), where the

California Supreme Court explained:

> To defend meaningfully, the insurer must defend immediately. . . . To defend immediately, it must defend entirely. It cannot parse the claims, dividing those that are at least potentially covered from those that are not. To do so would be time consuming. It might also be futile: The "plasticity of modern pleading" . . . allows the transformation of claims that are at least potentially covered into claims that are not, and vice versa. The fact remains: As to the claims that are at least potentially covered, the insurer gives, and the insured gets, just what they bargained for, namely, the mounting and funding of a defense. But as to the claims that are not, the insurer may give, and the insured may get, more than they agreed, depending on whether defense of these claims necessitates any additional costs.

Moreover, the "defense duty arises upon tender of a potentially covered claim and lasts until the

underlying lawsuit is concluded, or until it has been shown that there is no potential for coverage."

*Scottsdale Ins. Co. v. MV Transp.*, 36 Cal.4th 643, 655, 115 P.3d 460 (2005).

The insureds accuse Endurance of a "unilateral, self-serving assessment of respective liabilities"

of the insureds and RPP III to result in a "partial defense" of limited defense costs for "those claims or

13

1    matters covered by the policy." The insureds argue that they "are entitled to recover all costs and

2    expenses reasonably incurred" for their defense.

3           Endurance responds that it did not "unilaterally" allocate defense costs given that the allocation

4    between the insureds and RPP III was "part of the defense arrangements that the Insureds accepted in

5    exchange for Endurance agreeing to the Insureds' choice of defense counsel." Endurance notes the

6    policy's obligation "to defend any **Claim** against an **Insured**" affords no coverage to RPP III, which the

7    insureds acknowledge is not a policy insured. Endurance points out that section 2860 mandates defense

8    counsel for insureds only and does not entitle RPP III to defense or independent counsel.

9           Endurance challenges the insureds' interpretation of the allocation provision. Endurance notes

10   that although the allocation provision bars allocation of covered expenses, it does not include RPP III's

11   defense costs as Claim Expenses. Endurance further takes issue with the insureds' reliance on cases

12   addressing allocation between covered and uncovered claims, not based on insured and uninsured

13   parties. "Although the duty to defend under California law is broad, it does not encompass the duty to

14   defend persons who are not insured under the policy." *Nakauchi v. Allstate Ins. Co.*, 119 Fed. Appx.

15   116, 117 (9th Cir. 2004).

16          The insureds twist the allocation provision to attempt to cover defense costs of uninsured RPP

17   III. The allocation provision notes that when a claim is against an insured and uninsured, Endurance and

18   the insured "agree that there must be an allocation between the insured and uninsured **Loss**." The

19   allocation provision obligates the insureds to agree to an allocation in a situation such as this involving

20   an uninsured defendant. The insureds' claim that the allocation provision's third sentence modifies such

21   agreement, at best under the confines of the insureds' motion, creates an ambiguity or question of fact.

22   The insureds are unable to seriously champion an interpretation of Claim Expense to apply to an

23   uninsured defendant's defense costs. Such interpretation adds a term not found in the policy. Moreover,

24   the insureds fail to substantiate their partial defense claim which raises factual issues beyond their

25   motion to dismiss. The insureds' challenge to Endurance's allocation claim fails.

26                                            **Waiver**

27          The insureds attack the complaint's absence of facts to support the third declaratory relief claim

28   that the insureds waived and/or are estopped to seek attorney fees which Endurance did not consent to

                                               14

1    pay.  The insureds' challenge the waiver/estoppel claim's reliance on the insureds' purported 3½ month

2    delay  "to object to Endurance's unilateral, illegal conditions on the defense."  The insureds take issue

3    with the complaint's failure to allege that Endurance advised the insureds of their right to select

4    independent counsel under California Civil Code section 2860.

5         "Waiver is a voluntary relinquishment, expressly or impliedly, of a known right and depends

6    upon the intention of one party only."  *Elliano v. Assurance Co. of America*, 3 Cal.App.3d 446, 450, 83

7    Cal.Rptr. 509 (1970) (citing *Bastanchury v. Times Mirror Co.*, 68 Cal.App.2d 217, 240, 156 P.2d 488

8    (1945)).

9         The insureds challenge Endurance's failure to disclose the insureds' rights to "independent

10   counsel" and "non-allocation of defense costs."  The insureds point to an insurer's duty "to inform the

11   insured of his rights and obligations under the policy, particularly when an insured's apparent lack of

12   knowledge may result in a loss of benefits or a forfeiture of rights."  *Jones v. Grewe*, 189 Cal.App.3d

13   950, 955, 234 Cal.Rptr. 717 (1987); *see Davis v. Blue Cross of Northern California*, 25 Cal.3d 418, 428,

14   158 Cal.Rptr. 828 (1979) ("in situations in which an insured's lack of knowledge may potentially result

15   in a loss of benefits or a forfeiture of rights, an insurer has been required to bring to the insured's

16   attention relevant information so as to enable the insured to take action to secure rights afforded by the

17   policy").

18        As such, the insureds fault the complaint's absence of facts that the insureds knowingly waived

19   their rights to independent counsel and non-allocation of defense costs in that "[w]aiver is the intentional

20   relinquishment of a known right after knowledge of the facts" and the party claiming waiver of a right

21   must "prove it by clear and convincing evidence that does not leave the matter to speculation, and

22   'doubtful cases will be decided against a waiver.'"  *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal.4th 1,

23   31, 44 Cal.Rptr.2d 370 (1996) (citations omitted).  The insureds conclude that "it makes no sense" that

24   they "knowingly forfeited their substantive legal and contractual rights in exchange for nothing."

25        Endurance reiterates its points that there was no actual conflict of interest to entitle the insureds

26   to independent counsel under section 2860.  Endurance concludes that it was not required to provide the

27   insureds with notice of a right to independent counsel or to obtain the insureds' section 2860(e) waiver.

28   Endurance distinguishes authorities upon which the insureds rely by characterizing the insureds as

15

1  "sophisticated" with ability to negotiate coverage and "defense arrangements with the assistance of their

2  insurance broker."

3       The insureds fail to demonstrate the absence of facts to support dismissal of Endurance's waiver

4  claim.  The complaint alleges that "Endurance repeatedly asked the Insureds if the Insureds intended to

5  select Cozen O'Connor on the conditions" of the ROR letter.  The complaint further alleges that during

6  December 30, 2009 to late April 2010, the insureds never "objected to or disputed the conditions" of the

7  ROR letter's defense counsel arrangement to lead Endurance to believe that "those conditions were

8  acceptable."  The complaint's reasonable inferences are that the insureds accepted Endurance's proposed

9  defense arrangement for 3½ months and later sought to undo the arrangement.  Again, the insureds'

10  arguments raise factual questions beyond the scope of their motion to dismiss.

11                       **Estoppel**

12       The insureds fault the complaint's absence of facts that Endurance changed its position to support

13  estoppel of enforcement of the insureds' rights to independent counsel and non-allocation of defense

14  costs.

15       "Equitable estoppel is based upon the fundamental principle that 'one's conduct has induced

16  another to take such a position that he will be injured if the first party is permitted to repudiate his acts.'"

17  *Elliano*, 3 Cal.App.3d at 450, 83 Cal.Rptr. 509 (quoting *Bastanchury*, 68 Cal.App.2d at 240, 156 P.2d

18  488).

19       The elements of equitable estoppel are: "(1) The party to be estopped has engaged in

20  blameworthy or inequitable conduct; (2) that conduct caused or induced the other party to suffer some

21  disadvantage; and (3) equitable considerations warrant the conclusion that the first party should not be

22  permitted to exploit the disadvantage he has thus inflicted upon the second party."  *City of Hollister v.*

23  *Monterey Ins. Co.*, 165 Cal.App.4th 455, 487, 81 Cal.Rptr.3d 72 (2008).

24       The insureds challenge that the complaint lacks facts of the insureds' "blameworthy or

25  inequitable conduct" in that the complaint alleges the insureds' insistence that "Endurance perform all

26  of its legal and contractual obligations after learning of their actual rights which had been concealed by

27  Endurance."  The insureds further criticize the absence of facts of Endurance's "detrimental reliance"

28  in that Endurance lacked rights to choose the insureds' defense counsel and to allocate during the

underlying action.  The insureds argue that Endurance did not detrimentally rely on consent to Cozen O'Connor as defense counsel which arose from the insureds' exercise of their rights to independent counsel under section 2860.   The insureds' contend that their 3½ month delay to enforce their independent counsel rights fails to support estoppel.

Endurance responds that the complaint sufficiently addresses estoppel elements in that the complaint alleges that:

1.  The insureds led Endurance to believe that its defense counsel arrangements were acceptable to induce Endurance to accept Cozen O'Connor as defense counsel;

2.  Endurance, based on the insureds' conduct, "did not exercise its right to select different defense counsel that would have charged only reasonable and acceptable rates" and would not have defended RPP III; and

3.  The insureds should not be permitted to renege on their prior agreement and demand payment of defense costs to which Endurance did not agree.

Endurance concludes that by "foregoing its right to select defense counsel of its choosing, Endurance detrimentally relied" on conduct of the insureds, who seek payment of defense costs "far beyond what Endurance agreed to pay."

Endurance's points are well taken.  The complaint gives rise to no less than reasonable inferences that the insureds' accepted the ROR letter's defense counsel arrangements, upon which Endurance relied, and months later sought payment of all defense costs, including those for RPP III.  Endurance points to its foregone right to select counsel to represent only the insureds at Endurance's reasonable and acceptable rates.  Based on the complaint, the insureds disadvantaged Endurance by requiring Endurance to pay all defense costs, not merely those to which Endurance agreed to pursuant to the ROR letter.  The insureds fail to substantiate dismissal of Endurance's estoppel claim.

**Public Policy**

The insureds further contend that public policy bars the complaint's waiver/estoppel claim.

"[A]nyone may waive the provisions of a law or a contract for his benefit unless such a waiver would be against public policy."  *Patton v. Patton*, 32 Cal.2d 520, 196 P.2d 909 (1948) (citing Cal. Civ. Code, §§ 3268, 3513).

17

The insureds implore this Court to reject the waiver/estoppel claim "as an invalid attempt to shift the risks of an insurer's 'conflicted defense' back onto insureds when, in fact, the public purpose of Civil Code § 2860 is to protect insureds from those very risks." The insureds again assert that Endurance concealed the insureds' rights to independent counsel under section 2860 and to "a full and complete defense" under the allocation provision. The insureds point to California Civil Code section 1668, which concludes as "against the policy of the law," all "contracts which have for their direct object, directly or indirectly, to exempt one from responsibility for his own fraud . . . or violation of law, whether willful or negligent." The insureds conclude that Endurance's "purported arrangement would be unenforceable and against public policy pursuant to Civil Code § 1668" based on Endurance's "unclean hands" arising from attempts to conceal the insureds' "rights in relation to their defense."

Endurance responds that no public policy precludes its waiver/estoppel claim in that public policy would be violated with the insureds' taking advantage of "Endurance's valuable accommodations," "reneging on their prior agreement," "ignoring" Endurance's conditions for acceptance of defense counsel, and "demanding" Endurance's payment of all defense costs of the insureds and RPP III. Endurance argues that no public policy violations arise in absence of an actual conflict of interest.

At this pleading stage, the insureds fail to demonstrate a public policy violation to warrant dismissal of Endurance's waiver/estoppel claim. The insureds' lack of support for a public policy violation reflects their lack of sincerity to champion such notion. Endurance raises public policy issues which cut both ways to defeat dismissal of its waiver/estoppel claim.

**Reverse Bad Faith**

The insureds contend that the complaint's reverse "bad faith" claim fails with the complaint's absence of facts that insureds "breached their duties or obligations under the Policy."

"There is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement." *Kransco v. American Empire Surplus Lines Ins. Co.*, 23 Cal.4th 390, 400, 97 Cal.Rptr.2d 151 (2000) (quoting *Comunale v. Traders & General Ins. Co.,* 50 Cal.2d 654, 658, 328 P.2d 198 (1958)). A "duty of good faith and fair dealing in an insurance policy is a two-way street, running from the insured to his

insurer as well as vice versa." *Commercial Union Assurance Companies v. Safeway Stores, Inc.*, 26 Cal.3d 912, 918, 164 Cal.Rptr. 709 (1980). However, absent a contractual right, "the implied covenant has nothing upon which to act as a supplement, and 'should not be endowed with an existence independent of its contractual underpinnings.'" *Waller*, 11 Cal.4th at 36, 44 Cal.Rptr.2d 370 (quoting *Love v. Fire Ins. Exch.*, 221 Cal.App.3d 1136, 1153, 271 Cal.Rptr. 246 (1990)).

The insureds argue that the complaint lacks facts of Endurance's contract rights to support a bad faith claim. The insureds note that the complaint alleges only that the insureds "insisted on their rights to a complete and independent defense in the Underlying Action." The insureds point to the absence of allegations that the insureds breached their cooperation duties, impaired Endurance's subrogation rights, sought to assign their policy rights, or otherwise breached their policy obligations. The insureds note the absence of allegations of Endurance's injury or financial loss in that the complaint alleges only that the insureds incurred defense costs without corresponding allegations that Endurance reimbursed the insureds.

The insureds continue that Endurance is unable to claim tort damages such as *Brandt* attorney fees[7] because a reverse "bad faith" claim against an insured sounds only in contract. "The scope of the insured's duty of good faith and fair dealing in turn is confined by the express contractual provisions of the policy." *Kransco*, 23 Cal.4th at 405, 97 Cal.Rptr.2d 151. "Because an insured's breach of the covenant does not sound in tort, the insured's contractual breach of an express policy provision cannot be raised by the insurer as a defense in a bad faith action brought against it by the insured." *Kransco*, 23 Cal.4th at 405, 97 Cal.Rptr.2d 151; *California Fair Plan Assn. v. Politi*, 220 Cal.App.3d 1612, 1619, 270 Cal.Rptr. 243 (1990) (insurer's action against insured "for breach of the covenant of good faith and fair dealing was another 'garden variety breach of contract' action for which only contract damages may be recovered").

---

[7]     "When an insurer's tortious conduct reasonably compels the insured to retain an attorney to obtain the benefits due under a policy, it follows that the insurer should be liable in a tort action for that expense. The attorney's fees are an economic loss-damages-proximately caused by the tort. [Citation.] These fees must be distinguished from recovery of attorney's fees qua attorney's fees, such as those attributable to the bringing of the bad faith action itself. What we consider here is attorney's fees that are recoverable as damages resulting from a tort in the same way that medical fees would be part of the damages in a personal injury action." *Brandt v. Superior Court*, 37 Cal.3d 813, 817, 210 Cal.Rptr. 211 91985).

1    Endurance does not appear to challenge that it is limited to no more than a bad faith claim

2    sounding in contract.  Endurance notes that the complaint alleges existence of an insurance contract and

3    the insureds' duty to act in good faith.  Endurance argues that the insureds "had a duty to avoid

4    impermissibly incurring and demanding payment from Endurance for expenses beyond those Endurance

5    had expressed it was willing to pay."  Endurance notes the absence of authority that Endurance must

6    allege that "it actually paid sums of money to support a damages claim" given that Endurance's "actual

7    loss in the form of additional unreasonable claims expenses."

8    As a reminder, the policy obligates Endurance to pay "reasonable fees charged by any lawyer

9    selected by mutual agreement between the **Company** and the **Insured**."  The question arises whether

10   the insureds seek Endurance's payment of unreasonable fees and in turn to injure Endurance's rights

11   under the policy.  Contrary to the insureds' claim, Endurance has a contractual right – payment of

12   reasonable, not unreasonable, fees.  Endurance does not attempt to recover *Brandt* fees and appears to

13   acknowledge its inability to recover such damages sounding in tort.  The insureds fail to establish that

14   Endurance lacks a bad faith claim sounding in contract.  As such, Endurance's claim, to the extent based

15   in contract, not tort, survives the insureds' F.R.Civ.P. 12(b)(6) challenge.

16                                            **Attorney Fees**

17   The insureds seek to dismiss the complaint's attorney fees claim.  The insureds argue that the

18   policy and California law do not provide a basis for an insurer to recover attorney fees when seeking

19   declaratory relief.  The insureds contend that an insurer's bad faith claim against an insured is limited

20   to contract remedies to bar an insurer's recovery of attorney fees, including *Brandt* fees.

21                                     ***Statutory Or Contractual Basis***

22   "California follows what is commonly referred to as the American rule, which provides that each

23   party to a lawsuit must ordinarily pay his own attorney fees."  *Trope v. Katz*, 11 Cal.4th 274, 278, 45

24   Cal.Rptr.2d 241 (1995).  "This concept is embodied in section 1021 of the Code of Civil Procedure,

25   which provides that each party is to bear his own attorney fees unless a statute or the agreement of the

26   parties provides otherwise."  *Gray v. Don Miller & Associates, Inc.*, 35 Cal.3d 498, 504, 198 Cal.Rptr.

27   551 (1984).

28   As to Endurance's declaratory relief claims, the insureds correctly note that neither the federal

                                                  20

1  declaratory relief act nor the California declaratory relief statute provide the prevailing party grounds

2  to recover attorney fees.  *See* 28 U.S.C. §§ 2201; Cal. Code Civ. Proc., § 1060, et seq.

3      The insureds continue that a breach of contract claim does not support attorney fees in the

4  absence of an express attorney fees provision.  *See Metzger v. Silverman*, 62 Cal.App.3d Supp. 30, 37,

5  133 Cal.Rptr. 355 (1976) ("unless a suit is brought on a contract providing for attorney fees, the court

6  has no power to award attorney fees to the prevailing party even if the action was frivolous and brought

7  in bad faith").  The insureds point to the absence of an attorney fees provision in the policy to conclude

8  that the complaint's attorney fees claim fails with no supporting statutory or contractual basis.

9                                             ***Bad Faith***

10     The insureds point out that *Brandt* fees (discussed above) are recoverable only against an insurer

11 who breaches the implied covenant of good faith and fair dealing and are not recoverable for an insured's

12 breach of the implied covenant which sounds in contract.  In *Kransco*, 23 Cal.4th at 402, 97 Cal.Rptr.2d

13 151, the California Supreme Court explained:

> But the scope of the insured's duty of good faith and fair dealing, and the remedies available to the insurer for a breach of that duty, are fundamentally and conceptually distinct from the insurer's reciprocal duty, and the remedies available to the insured for breach of that duty, under the insurance policy. As this court has explained, it is an insurer's breach of the covenant of good faith that is governed by tort principles, at least as concerns the availability of tort damages. (*Gruenberg v. Aetna Ins. Co.* (1973) 9 Cal.3d 566, 574 [108 Cal.Rptr. 480, 510 P.2d 1032] (*Gruenberg*).) In contrast, an insured's breach of the covenant is not a tort. . . . An insurer's tort liability is predicated upon special factors inapplicable to the insured. (Citations omitted.)

19 "However, while a breach of the covenant by an insurer results in an action which sounds both in tort

20 and contract, the same is not true when an insured breaches the covenant. . . . An action by an insurer

21 against its insured for breach of the covenant of good faith and fair dealing only sounds in contract and,

22 thus, any recovery must be limited to contract damages." *Politi*, 220 Cal.App.3d at 1618, 270 Cal.Rptr.

23 243.  "In summary, an insured may be held liable in contract for breaching the covenant, but cannot be

24 held liable in tort." *Agricultural Ins. Co. v. Superior Court*, 70 Cal.App.4th 385, 396, 82 Cal.Rptr.2d

25 594 (1999).

26     The insureds conclude that "[b]ased on this authority, Endurance's breach of the implied

27 covenant claim cannot support any recovery of tort damages," such as *Brandt* fees.

28     Endurance offers no meaningful opposition to dismissal of its attorney fees claim.  Endurance

1   merely claims that striking the attorney fees claim at this pleading stages is "premature" in that

2   "Endurance may be able to show fraudulent or other tortious conduct in connection with the [insured's]

3   breach of the covenant of good faith and fair dealing."   The insureds correctly object to Endurance's

4   attempt to "'fish' for evidence."

5       Endurance rests its attorney fees claim on a hope and a prayer that new facts will emerge to

6   transcend established law that insurer bad faith remedies are limited to those in contract.  In the absence

7   of a statute or contract provision entitling it to attorney fees, Endurance lacks a basis for its attorney fees

8   claim to warrant its dismissal.

9                               **Punitive Damages**

10      The insureds attack the complaint's punitive damages claim as insufficiently pled.  The insureds

11  fault the complaint's failure to support punitive damages given the complaint's limited allegations

12  sounding in contract and absence of allegations of malice, oppression or fraud.

13                         *General Pleading Requirements*

14      California Civil Code section 3294 ("section 3294") provides that in an action "for breach of an

15  obligation not arising from contract," a plaintiff may seek punitive damages "where it is proven by clear

16  and convincing evidence that the defendant has been guilty of oppression, fraud, or malice."  Cal. Civ.

17  Code, § 3294(a).

18      "Although the court will apply the substantive law embodied in section 3294, 'determinations

19  regarding the adequacy of pleadings are governed by the Federal Rules of Civil Procedure.'"  *Jackson*

20  *v. East Bay Hosp.*, 980 F.Supp. 1341, 1353 (N.D. Cal. 1997).

21      Punitive damages are "available to a party who can plead and prove the facts and circumstances

22  set forth in Civil Code section 3294."  *Hilliard v. A.H. Robbins Co.*, 148 Cal.App.3d 374, 392, 196

23  Cal.Rptr. 117 (1983).  "To support punitive damages, the complaint . . . must allege ultimate facts of the

24  defendant's oppression, fraud, or malice."  *Cyrus v. Haveson*, 65 Cal.App.3d 306, 316-317, 135 Cal.Rptr.

25  246 (1976).  Pleading the language in section 3294 "is not objectionable when sufficient facts are alleged

26  to support the allegation."  *Perkins v. Superior Court*, 117 Cal.App.3d 1, 6-7, 172 Cal.Rptr. 427 (1981).

27      In *G.D. Searle & Co. v. Superior Court*, 49 Cal.App.3d 22, 29, 122 Cal.Rptr. 218 (1975), the

28  California Court of Appeal explained punitive damages pleading:

> When the plaintiff alleges an intentional wrong, a prayer for exemplary damage may be supported by pleading that the wrong was committed willfully or with a design to injure. . . . When nondeliberate injury is charged, allegations that the defendant's conduct was wrongful, willful, wanton, reckless or unlawful do not support a claim for exemplary damages; such allegations do not charge malice. . . . When a defendant must produce evidence in defense of an exemplary damage claim; fairness demands that he receive adequate notice of the kind of conduct charged against him.  (Citations omitted.)

"Allegations that the acts . . . were 'arbitrary, capricious, fraudulent, wrongful and unlawful,' like other adjectival descriptions of such proceedings, constitute mere conclusions of law . . ." *Faulkner v. California Toll Bridge Authority*, 40 Cal.2d 317, 329, 253 P.2d 659 (1953); *see Letho v. Underground Construction Co.*, 69 Cal.App.3d 933, 944, 138 Cal.Rptr. 419 (1997) (facts and circumstances of fraud should be set out clearly, concisely, and with sufficient particularity to support punitive damages); *Smith v. Superior Court*, 10 Cal.App.4th 1033, 1042, 13 Cal.Rptr.2d 133 (1992) (punitive damages claim is insufficient in that it is "devoid of any factual assertions supporting a conclusion petitioners acted with oppression, fraud or malice."); *Brousseau v. Jarrett*, 73 Cal.App.3d 864, 872, 141 Cal.Rptr. 200 (1977) ("conclusory characterization of defendant's conduct as intentional, willful and fraudulent is a patently insufficient statement of 'oppression, fraud, or malice, express or implied,' within the meaning of section 3294").

Punitive damages are never awarded as a matter of right, are disfavored by the law, and should be granted with the greatest of caution and only in the clearest of cases. *Henderson v. Security Pacific National Bank*, 72 Cal.App.3d 764, 771, 140 Cal.Rptr. 388 (1977).

### Contract-Based Claims

The insureds contend that punitive damages are unavailable under the declaratory relief claims which are "contractual" in that they seek clarification of "contractual duties."

"[P]unitive damages are not available for mere breaches of contract, even if fraudulent or in bad faith." *999 v. C.I.T. Corp.*, 776 F.2d 866, 872 (9th Cir. 1985) (applying California law). "Under California law, punitive damages are not available for breaches of contract no matter how gross or willful." *Tibbs v. Great American Ins. Co.*, 755 F.2d 1370, 1375 (9th Cir. 1985).

### Malice, Oppression Or Fraud

The insureds attack the complaint's absence of allegations that the insureds' conduct "comes remotely close to the requisite level of "malice,' 'oppression' or 'fraud.'" The insureds note that the

complaint merely alleges that the insures "insisted on their legal and contractual rights to independent counsel and a full, unallocated defense."

Section 3294(c)(1)–(3) defines:

1.  "Malice" as "conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights and safety of others";

2.  "Oppression" as "despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights"; and

3.  "Fraud" as "an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury."

"'Despicable conduct' to establish malice or oppression under section 3294(c) is so vile, base, contemptible, miserable, wretched or loathsome that it would be looked down upon and despised by ordinary decent people." *Mock v. Michigan Millers Mutual Ins. Co.*, 4 Cal.App.4th 306, 331, 5 Cal.Rptr.2d 594 (1992). "Such conduct has been described as '[having] the character of outrage frequently associated with crime.'" *Tomaselli v. Transamerica Ins. Co.,* 25 Cal.App.4th 1269, 1287, 31 Cal.Rptr.2d 433 (1994) (quoting *Taylor v. Superior Court,* 24 Cal.3d 890, 894, 157 Cal.Rptr. 693, 598 P.2d 854 (1979)).

The insureds argue that the complaint fails to allege facts of malice or oppression based on mere allegations that the insureds insisted that their current counsel defend them and objected to Endurance's payment of only one third of defense costs.

To establish malice for punitive damages a defendant must have acted "with the intent to vex, injure, or annoy, or with a conscious disregard of the plaintiff's rights." *Taylor*, 24 Cal.3d at 895, 157 Cal.Rptr. 693. "To justify an award of punitive damages on this basis [of conscious disregard], the plaintiff must establish that the defendant was aware of the probable dangerous consequences of his conduct, and that he wilfully and deliberately failed to avoid those consequences. *Taylor*, 24 Cal.3d at 895, 157 Cal.Rptr. 693. However, "punitive damage awards have been reversed where the defendant's conduct was merely in bad faith and overzealous." *Lackner v. North*, 135

1    Cal.App.4th 1188, 1212, 37 Cal.Rptr.3d 863 (2006).

2         The insureds argue that their alleged conduct does not evidence an "intent to vex, injure, or

3    annoy" or "a conscious disregard" of Endurance's rights.  The insureds contend that the complaint lacks

4    facts of "oppression" in the absence of facts that "this controversy over applicable defense counsel rates

5    somehow resulted in a 'threat to its [Endurance's] existence or financial stability.'"  Lastly, the insureds

6    note the absence of a basis for "fraud," especially given the lack of particularized pleading to satisfy

7    F.R.Civ.P. 9(b) or the insured's alleged misrepresentation.

8         The insureds raise valid challenges to the complaint's punitive damages claim.  The complaint

9    lacks grounds to impose punitive damages against the insureds, especially given that Endurance's bad

10   faith claim is limited to contractual grounds and thus fails to support punitive damages.  Similar to the

11   attorney fees claim, Endurance offers no meaningful support to maintain the punitive damages claim.

12   The complaint reflects nothing to substantiate necessary elements for punitive damages to warrant

13   dismissal of the punitive damages claim.

14                            **<u>CONCLUSION AND ORDER</u>**

15        For the reasons discussed above, this Court:

16        1.   DISMISSES with prejudice Endurance's attorney fees and punitive damages claims in

17             total and Endurance's bad faith claim to the extent it is based on tort;

18        2.   OTHERWISE DENIES dismissal of Endurance's claims; and

19        3.   ORDERS the insureds, no later than September 27, 2010, to file an answer to the

20             complaint.

21        IT IS SO ORDERED.

22   **Dated:   September 13, 2010**          **/s/ Lawrence J. O'Neill**
                                           UNITED STATES DISTRICT JUDGE

23

24

25

26

27

28