IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENDURANCE AMERICAN SPECIALTY INSURANCE COMPANY,<br><br>                Plaintiff,<br><br>   vs.<br><br>LANCE-KASHIAN & COMPANY, et al,<br><br>                Defendants.<br>                                /<br>AND COUNTER-ACTION.<br>                                / | CASE NO. CV F 10-1284 LJO DLB<br><br>**ORDER ON DAMAGES CLAIM**<br>(Doc. 48.) |

**INTRODUCTION**

Plaintiff/counter-defendant Endurance American Specialty Insurance Company ("Endurance") seeks to exclude what Endurance characterizes as defendants/counter-plaintiffs' new theory of damages first disclosed during the deposition of defendant/counter-plaintiff Edward Kashian ("Mr. Kashian"). Alternatively, Endurance seeks to reopen discovery and modify expert discovery and motion deadlines to address the new damages theory. Defendants/counter-plaintiffs filed no papers to oppose exclusion of the damages theory. This Court considered Endurance's alternative motions to address the new damages theory on the record and VACATES the September 26, 2011 hearing, pursuant to Local Rule 230(c), (g). For the reasons discussed below, this Court EXCLUDES evidence of the new damages theory.

1

# BACKGROUND

## Summary

At relevant times, non-party Gottschalks, Inc. ("Gottschalks") was the sole limited partner in the Park 41 Limited Partnership ("Park 41") and owned 36 percent of Park 41. Non-party River Park Properties III ("RPP III") was a California limited partnership, owned 64 percent of Park 41, and was its sole general partner.

Defendant/counter-plaintiff Lance-Kashian & Company ("Lance-Kashian") is RPP III's general partner. Defendant/counter-plaintiff Jennifer Schuh ("Ms. Schuh") is Lance-Kashian's chief executive officer. Mr. Kashian is Lance-Kashian's president and former chief executive officer.[1]

Endurance contends that at his August 17, 2011 deposition, Mr. Kashian identified for the first time a damages theory of a $12 million lost business opportunity for insureds related to Park 41. Endurance seeks to exclude the damages theory given that it was not disclosed in the insureds' F.R.Civ.P. 26(a)(1) initial disclosures or interrogatory responses and the non-expert discovery deadline has closed to prevent Endurance to address the new damages theory.

## The Underlying Action

In late 2008, Endurance issued to the insureds a Professional, Management, Employment Practices and Fiduciary Liability Insurance Policy ("policy"). On November 12, 2009 when the policy was in effect, Gottschalks, as debtor in a Delaware bankruptcy proceeding, filed an adversary proceeding ("underlying action") against the insureds and RPP III to allege that the insureds and RPP III had wrongfully interfered with Gottschalks' efforts to assign its limited partnership and leasehold interest in Park 41. Prior to the underlying action's filing, the insureds and RPP III had retained Cozen O'Connor, a large international law firm, to represent their collective interests in Gottschalks' bankruptcy. On November 17, 2009, the insureds informed Endurance of the underlying action and requested Endurance's consent to Cozen O'Connor's retention to defend the insureds in the underlying action.

/ / /

---

[1] This Court will refer to Lance-Kashian, Ms. Schuh and Mr. Kashian collectively as "insureds."

### Endurance's Reservation Of Rights

Endurance responded with its December 30, 2009 reservation of rights letter ("ROR letter") to note that Cozen O'Connor's rates "are substantially higher than Endurance's generally accepted rates for counsel." The ROR letter continued:

> Accordingly, Endurance will only consent to the Insureds' proposed defense arrangement and retention of Cozen O'Connor at reduced hourly rates as follows: (1) maximum hourly rates for partners of $350/hr; (2) maximum hourly rates for associates of $250/hr; and (3) maximum hourly rates for paralegals of $150/hr.
>
> . . . Based on the allegations and legal theories set forth in the Adversary Proceeding, it appears that RPP III is the subject to the majority, if not all, of any potential liability arising out of the Adversary Proceeding. Thus, Endurance proposes an allocation of one-third of the defense costs incurred by Cozen O'Connor in defending the Adversary Proceeding to the Insured parties and two-thirds to the non-insured party RPP III.

### The Parties' Claims

Endurance pursues against the insureds declaratory relief claims that Endurance is obligated to pay only one-third of the attorney fees charged by Cozen O'Connor to defend the underlying action at maximum hourly rates of $350 for partners, $250 for associates, and $150 for paralegals and that the insureds are obligated to pay attorney fees they incurred without Endurance's consent.

The insureds pursue counter-claims to allege that Endurance breached policy obligations to pay the insureds' defense costs in the underlying action.

### The Insureds' Discovery Responses

The insureds' November 4, 2010 F.R.Civ.P. 26(a)(1) initial disclosures identified as damages $1,085,610.45 defense costs incurred by the insureds in the underlying action and owing under the policy and $91,137.36 litigation expenses to secure policy benefits for a total of $1,176,747.81 "with interest."

In response to Endurance's interrogatory to identify the insureds' damages, the insureds responded:

> . . . attorney's fees, defense costs, lost consideration paid in connection with settlement and all other expenses incurred as a result of Endurances [sic] wrongful conduct in connection with the Adversary Proceeding [underlying action]; fees and costs incurred by being forced to retain coverage counsel in order to obtain unreasonably withheld insurance benefits under the Endurance policy . . . and other economic and consequential damages.

In response to Endurance's interrogatories to state the amount of the insureds' damages and their


calculation, the insureds responded that Lance-Kashian has identified $1,366,997.61 in outstanding defense fees and costs in the underlying action and calculated based on invoices less amounts paid by Endurance.

Endurance notes that on June 14, 2011, the insureds supplemented their initial disclosures but included nothing regarding alleged damages. Endurance further notes that the insureds did not supplement their interrogatory responses.

### Mr. Kashian's Deposition Testimony

Endurance notes that at his August 17, 2011 deposition, Mr. Kashian "identified for the first time a damages theory that he contends might be valued at more than $12 million relating to a purported lost business opportunity." According to Endurance, Mr. Kashian testified that the underlying action was frivolous and that had it been defended through trial, the insureds would have defeated Gottschalks claims and that through default provisions in contracts with Gottschalks, the insureds would have diluted Gottschalks interest in an office building from 36 percent to one percent with the 35 percent difference reverting to Mr. Kashian. Mr. Kashian further testified that the building was last appraised at $35 million to render an 35 percent interest worth more than $12 million. Mr. Kashian contends that based on Endurance's breach of duty to defend the insureds in the underlying action, Mr. Kashian was unable to obtain the 35 percent interest in that the insureds could not afford to litigate the underlying action through trial and were forced to settle on terms that excluded the insureds' 35 percent interest in the building.

### DISCUSSION

### Supplemental Discovery Standards

Endurance seeks to exclude evidence of the building damages in that insureds first identified the theory after the July 5, 2011 non-expert discovery cutoff.

Under F.R.Civ.P. 26(a)(1)(A)(iii), "a party must, without awaiting a discovery request, provide to the other parties . . . a computation of each category of damages claimed by the disclosing party . . ." F.R.Civ.P. 26(e)(1)(A) requires supplementation of initial disclosures and discovery responses:

> A party who has made a disclosure under Rule 26(a) – or who has responded to an interrogatory . . . – must supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response

is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing . . .

F.R.Civ.P. 37(c)(1) authorizes withholding undisclosed information and information not supplemented:

> If a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

F.R.Civ.P. 37(c)(1) provides "a self-executing, automatic sanction to provide a strong inducement for disclosure of material." *Yeti by Molly, Ltd. V. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (citation, alterations and internal quotation marks omitted). "The implementation of the sanction is appropriate "even when a litigant's entire cause of action . . . [will be] precluded." *Yeti*, 259 F.3d at 1106.

Endurance accuses the insureds of failure to supplement their F.R.Civ.P. 26(a)(1) initial disclosures and interrogatory responses to include the building damages theory. Endurance notes its diligent discovery into "the claims and damages theory that were disclosed by the Insureds in their Rule 26(a)(1) disclosures and interrogatory responses." Endurance argues that the insureds have known of the "factual predicates" for the building damages theory since no later than the January 19, 2011 settlement of the underlying action. Endurance attributes the insureds to have delayed until the close of non-expert discovery "to spring this new theory . . . so the Endurance could not take certain non-expert discovery necessary to defend against such damages theory." Endurance concludes that evidence of the building damages theory should be excluded. *See Mee Industries v. Dow Chemical Co.*, 608 F.3d 1202, 1222 (11th Cir. 2010) ("district court did not abuse its broad discretion in rebuffing [plaintiff's] belated effort to introduce a new category of damages, especially in light of its failure to ever present the required computation of alleged good will damages and the complexity of the financial calculations that would have required expert testimony").

Endurance raises valid points to exclude the building damages theory, which was not disclosed to comply with F.R.Civ.P. 26(a)(1) and F.R.Civ.P. 26(e)(1). The insureds offer no opposition to exclude the building damages theory. Pursuant to F.R.Civ.P. 37(c)(1), evidence of the building damages theory is excluded.

**Reopening Discovery And Extending Motion And Expert Discovery Dates**

As an alternative to excluding evidence of the building damages theory, Endurance requests to reopen non-expert discovery, which effectively closed on July 5, 2011, and extend the October 3, 2011 dispositive motion deadline and October 7, 2011 expert discovery cutoff.

Pursuant to F.R.Civ.P. 16(b)(3), district courts must enter scheduling orders to establish deadlines for, among other things, to "complete discovery" and to "file motions." "A schedule may be modified only for good cause and with the judge's consent." F.R.Civ.P. 16(b)(4). The scheduling order "controls the course of the action unless the court modifies it." F.R.Civ.P. 16(d).

Scheduling orders "are the heart of case management," *Koplve v. Ford Motor Co.*, 795 F.2d 15, 18 (3rd Cir. 1986), and are intended to alleviate case management problems. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992). A "scheduling conference order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded without peril." *Johnson*, 975 F.2d at 610. In *Johnson*, 975 F.2d at 609, the Ninth Circuit Court of Appeals explained:

> . . . Rule 16(b)'s "good cause" standard primarily concerns the diligence of the party seeking the amendment. The district court may modify the pretrial schedule "if it cannot reasonably be met despite the diligence of the party seeking the extension." Fed.R.Civ.P. 16 advisory committee's notes (1983 amendment) . . . Moreover, carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief. . . . [T]he focus of the inquiry is upon the moving party's reasons for seeking modification. . . . If that party was not diligent, the inquiry should end.

Parties must "diligently attempt to adhere to that schedule throughout the subsequent course of the litigation." *Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 607 (E.D. Cal. 1999); *see Marcum v. Zimmer*, 163 F.R.D. 250, 254 (S.D. W.Va. 1995). In addressing the diligence requirement, this Court has noted:

> Accordingly, to demonstrate diligence under Rule 16's "good cause" standard, the movant may be required to show the following: (1) that she was diligent in assisting the Court in creating a workable Rule 16 order, *see In re San Juan Dupont*, 111 F.3d at 228; (2) that her noncompliance with a Rule 16 deadline occurred or will occur, notwithstanding her diligent efforts to comply, because of the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference, *see Johnson*, 975 F.2d at 609; and (3) that she was diligent in seeking amendment of the Rule 16 order, once it became apparent that she could not comply with the order, *see Eckert Cold Storage*, 943 F.Supp. at 1233.

*Jackson*, 186 F.R.D. at 608.

Moreover, this Court's Local Rule 6-144(d) provides:

> Counsel shall seek to obtain a necessary extension from the Court or from other counsel

or parties in an action as soon as the need for an extension becomes apparent. Requests for Court-approved extensions brought on the required filing date for the pleading or other documents are looked upon with disfavor.

Endurance argues there is good cause to reopen discovery given the insureds' belated disclosure of the building damages theory despite Endurance's "diligent requests for such information." Endurance contends it needs additional non-expert discovery to defend the building damages theory. Endurance seeks written discovery and depositions concerning the insureds' financial condition at the time of the underlying action's settlement, communications regarding settlement of the underlying action, and the insureds' entitlement to the 35 percent interest in the building. Endurance notes that it could not have foreseen the building damages theory based on the insureds' initial disclosures and interrogatory responses.

Closure of non-expert discovery further supports exclusion of the building damages theory. Endurance has demonstrated its diligence to comply with scheduled dates relative to the insureds' damages. Reopening discovery would serve to reward the insureds' withholding disclosure of required information.

## CONCLUSION AND ORDER

For the reasons discussed above, this Court EXCLUDES evidence of the building damages theory.

IT IS SO ORDERED.

Dated:   September 19, 2011                         /s/ Lawrence J. O'Neill
                                                    UNITED STATES DISTRICT JUDGE